UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————

RAYMOND FAIRBANK,

                                        Plaintiff,

                  -vs-                                              13-CV-0083-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                        Defendant.

———————————————————————————

APPEARANCES:    LAW OFFICES OF KENNETH HILLER (KENNETH R. HILLER, ESQ.,
                and JAYA ANN SHURTLIFF, ESQ., of Counsel), Amherst, New York,
                for Plaintiff

                WILLIAM J. HOCHUL, JR., United States Attorney (MARY K. ROACH
                and MICHAEL S. CERRONE, Assistant United States Attorneys, of
                Counsel), Buffalo, New York, for Defendant.

        This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny dated April 23, 2015 (Item

18).

        Plaintiff Raymond Fairbank initiated this action on January 25, 2013, pursuant to the

Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final

determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's

application for Social Security Disability Insurance ("SSDI") and Supplemental Security

Income ("SSI") benefits under Title II and Title XVI of the Act, respectively.  Both parties

have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure (*see* Items 9, 15).  For the following reasons, plaintiff's motion is denied,

and the Commissioner's motion is granted.

## BACKGROUND

Plaintiff was born on September 19, 1965 (Tr. 149).[1]  He filed applications for SSDI and SSI benefits in October 2009, alleging disability due to neck injury, headaches, and arthritis, with an onset date of November 1, 2008 (Tr. 149, 151).  The applications were denied administratively on December 30, 2009 (Tr. 75-90).  Plaintiff requested a hearing, which was held on February 3, 2011, before Administrative Law Judge ("ALJ") Jennifer Whang (Tr. 29-54).  Plaintiff appeared and testified at the hearing, and was represented by counsel.  Mr. Newton, a Vocational Expert ("VE"), also appeared and testified.

On February 11, 2011, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 57-68).  Following the sequential evaluation process outlined in the Social Security Administration regulations governing claims for benefits under Titles II and XVI (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's impairments (identified by the ALJ as obesity, degenerative disc disease of the cervical, lumbar, and thoracic spine, and migraine headaches), while "severe" within the meaning of the Act and considered alone or in combination, did not meet or medically equal the criteria of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 62-63).  The ALJ discussed the evidence in the record regarding the functional limitations caused by plaintiff's impairments, including the objective medical evidence and plaintiff's testimony and written statements about his symptoms, and determined that plaintiff had the residual functional capacity ("RFC") to perform work at the

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 6).

"light"[2] exertional level, with additional specific exertional limitations  (Tr.  63).  Based on this RFC assessment, and relying on the VE's testimony, the ALJ found that plaintiff would not be able to return to any of his past relevant work (Tr. 66), but given his age, education, work experience, and RFC, would be capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 66-67).  Using Rule 202.21 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids"), as a framework for decision-making, the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the alleged onset date (Tr. 67-68).

The ALJ's decision became the final decision of the Commissioner on November 30, 2012, when the Appeals Council denied plaintiff's request for review (Tr. 1-3), and this action followed.

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ improperly assessed plaintiff's RFC and credibility, and improperly relied on the VE's testimony.  *See* Items 9-1, 17.  The government contends that the Commissioner's determination should be affirmed

---

[2]"Light work" is defined in the regulations as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence. *See* Item 15-1.

## DISCUSSION

### I. Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will

not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.  *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.    Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …."   42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).  As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes

before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R.§§ 404.1520, 416.920.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008

WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience."  *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' "  *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

## III.    The ALJ's Disability Determination

In this case, ALJ Whang determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since November 1, 2008, the alleged onset date (Tr. 62).  At step two, the ALJ determined that plaintiff's obesity, spinal disorder, and migraine headaches are "severe" impairments, as that term is defined in the regulations, "insofar as they cause more than minimal functional limitations in the [plaintiff]'s ability to perform some basic work activities" (Tr. 62) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals any impairment in the Listings,

specifically considering the criteria of Listing 1.04 (*Disorders of the spine*).  The ALJ noted that in reaching this conclusion, she took into account the considerations of Social Security Ruling ("SSR") 02-01p regarding the effect of plaintiff's obesity on his ability to perform work-related activities (*see* Tr. 63)

The ALJ then found that plaintiff had the RFC for a range of light work, with the following limitations: he requires an option permitting him to alternate between a sitting or standing position every 30 minutes; he can occasionally use ramps and climb stairs, but should never climb ladders, ropes, or scaffolds; he can occasionally stoop, kneel, crouch, or crawl; he can do occasional rotation and flexion of his neck; he can do frequent but not constant reaching with his non-dominant left arm; and he should avoid hazards such as moving machinery and unprotected heights (Tr. 63).  In making this finding, the ALJ discussed the medical evidence in the record, along with plaintiff's hearing testimony and written statements regarding his activities of daily living and the functional limitations caused by the symptoms of his impairments (Tr. 64-65).  Based upon her consideration of this evidence, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the pain, numbness, and other symptoms alleged, but that his statements regarding the limiting effects of his symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment (Tr. 64).

With regard to the medical evidence, the ALJ discussed treatment notes from the office of plaintiff's primary physician, Dr. Richard Aguirre at Lakeville Family Medicine, where plaintiff was seen in December 2008 by physician's assistant ("PA") Adam Mizzi for assessment of a painful soft tissue mass on his neck (Tr. 64, 229).  Plaintiff was thereafter referred to Dr. Seth Zeidman, a neurosurgeon at Rochester Brain & Spine, who saw

plaintiff in July 2009 for evaluation of his back and neck pain (*see* Tr. 238-41).   Dr. Zeidman ordered diagnostic imaging studies, including MRI scans of the cervical, thoracic and lumbar spines (Tr. 234-37), which were reviewed by Dr. Zeidman at a follow-up visit on August 6, 2009.  Dr. Zeidman's impression was small C5-6 and minimal C6-7 posterior disc bulge; mild degenerative changes of the thoracic spine; and small central disc bulge at L5-S1, with "otherwise unremarkable" findings (Tr. 65, 243-44).  Plaintiff was seen again at Rochester Brain & Spine on September 15, 2009, and was examined by Dr. Roger Ng, who reported tenderness of the C7 paravertebral regions (neck) and in the lumbar spine, but otherwise made findings within normal limits (Tr. 250-51).  The ALJ noted that plaintiff's neck and back pain was treated conservatively, with occasional epidural steroid injections but no medication (Tr. 64; *see* Tr. 268-69), and further, that plaintiff "received no treatment for his degenerative disease" (Tr. 65).

The ALJ also referred to a functional capacity report dated November 6, 2009, completed by PA  Mizzi, indicating that plaintiff could sit for a half hour at a time, and for a total of five hours in an eight-hour workday; he could and stand/walk for a half hour at a time, and for a total of one hour in an eight-hour workday; he could occasionally lift up to one hundred pounds and carry up to twenty-five pounds; he could use his hands for repetitive fine manipulation, but not for repetitive grasping or pushing/pulling of arm controls; he could not use his feet for repetitive pushing/pulling of leg controls; he could occasionally bend, squat, crawl, and reach; and he required mild restrictions to environmental hazards (Tr. 266).  Mr. Mizzi indicated that plaintiff's pain and medication would only interfere with work requiring sustained concentration, and that plaintiff did not experience exacerbations of his pain symptoms that would make it impossible to function

in a work setting.  He would need to lie down for less than an hour during an 8-hour work day to relieve pain.  Nonetheless, Mr. Mizzi indicated on the functional capacity form that plaintiff was disabled from full-time competitive employment on a sustained basis, and could only work for a maximum of three hours per day before his pain prevented the performance of even simple work tasks (Tr. 267).  The ALJ accorded this opinion "little weight" (Tr. 65), listing the following reasons: a physician's assistant is not an acceptable treating source; there was conflicting information on the evaluation form regarding plaintiff's functional capacity; the treating relationship was of a relatively short duration; and that, pursuant to agency regulations and rulings, opinions as to whether a claimant is "disabled" are reserved to the Commissioner (*id.*).

Based upon this RFC assessment, and relying on the VE's testimony regarding the exertional requirements of jobs as classified in the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT"), the ALJ determined that plaintiff could not return to any of his past relevant "medium" work as a machine operator, auto body repairer, or furniture assembler (Tr. 66).   At the final step of the sequential evaluation, the ALJ found that there were jobs existing in substantial numbers in the national economy that plaintiff could perform, based primarily on the VE's response to a hypothetical question posed at the hearing regarding whether an individual of plaintiff's age and with similar education, work experience, and RFC could perform the work requirements of those representative occupations (Tr. 67).  The ALJ then relied on Rule 202.21 of the Grids as a framework for decisionmaking, finding plaintiff "not disabled" within the meaning of the Act at any time during the relevant period (Tr. 67-68).

IV.    **Plaintiff's Motion**

      A.    **RFC**

Plaintiff contends that the Commissioner's determination should be reversed because the ALJ improperly assessed plaintiff's RFC.  According to plaintiff, by according "little weight" to  the PA's functional capacity evaluation and opinion on disability, the ALJ was left without an opinion from a treating medical source as to the nature and severity of plaintiff's impairments, and their effect on plaintiff's ability to perform basic work-related activities.

As explained in the Social Security Administration's policy interpretation ruling regarding the assessment of RFC:

> RFC is what an individual can still do despite his or her limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.  Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.  RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*.

SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996) (emphasis supplied).  "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work."  *Domm v. Colvin*,  2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545(a)(3)-(4)).  The RFC determination "must be set forth with sufficient specificity to enable [the court] to decide whether the

determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *see also Hamlin v. Colvin*, 2014 WL 4669244, at *6 (N.D.N.Y. Sept. 18, 2014).

As indicated above, in this case ALJ Whang clearly explained her reliance on the objective medical evidence to support her RFC assessment, including the "unremarkable" or "normal" findings reflected in the results and analyses of diagnostic studies and physical examination reports.  The ALJ also noted that the record reflected plaintiff's limited treatment for his impairments, with specific reference to plaintiff's testimony that he takes no pain medication for his spinal disorders (Tr. 64).  The record further supports the ALJ's finding that plaintiff maintains "relatively high functioning despite his allegations of pain" (Tr. 65), as reflected by plaintiff's hearing testimony indicating that he independently takes care of his eleven-year-old son, does the grocery shopping, cooks, and performs other household chores, and maintains a drivers' license (Tr. 37, 39-40).

The court also finds that the ALJ's evaluation of the relative weight to be accorded to the physician's assistant's opinion was accomplished in accordance with the directives of the Social Security regulations.  SSR 06–03p provides in this regard that, in evaluating "all relevant evidence in a case record," the ALJ must consider not only opinion evidence from "acceptable medical sources," but also evidence provided by "[m]edical sources who are not 'acceptable medical sources,' such as … physician assistants …."  SSR 06–03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006).  The ruling directs the ALJ to use essentially the same factors in evaluating the opinions of these "other sources" as are used to evaluate the opinions of "acceptable medical sources" set forth in 20 C.F.R. §§ 404.1527 and 416.927.  These factors include:

- The examining relationship between the individual and the "acceptable medical source";

- The treatment relationship between the individual and a treating source, including its length, nature, and extent as well as frequency of examination;

- The degree to which the "acceptable medical source" presents an explanation and relevant evidence to support an opinion, particularly medical signs and laboratory findings;

- How consistent the medical opinion is with the record as a whole;

- Whether the opinion is from an "acceptable medical source" who is a specialist and is about medical issues related to his or her area of specialty; and

- Any other factors brought to the ALJ's attention which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an "acceptable medical source" has, regardless of the source of that understanding, and the extent to which an "acceptable medical source" is familiar with the other information in the case record, are all relevant factors that we will consider in deciding the weight to give to a medical opinion.

*Id.* at *2-*3; *see* 20 C.F.R. §§ 404.1527(c), 416.927(c).  As explained in the ruling:

Not every factor for weighing opinion evidence will apply in every case.  The evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case.  Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

SSR 06–03p, 2006 WL 2329939, at *5. Further:

Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

-14-

*Id.* at *6.  Under this guidance, "[w]hile the Commissioner is thus free to decide that the opinions of 'other sources' … are entitled to no weight or little weight, those decisions should be explained." *Sears v. Astrue*, 2012 WL 1758843, at *3 (D.Vt. May 15, 2012); *see also Colon v. Astrue*, 2013 WL 2245457, at *10 (W.D.N.Y. May 21, 2013) (finding abuse of discretion for ALJ to "entirely ignore" other source evidence).

In this case, as discussed above, ALJ Whang fully explained her reasons for the weight she gave to PA Mizzi's opinion, in accordance with the factors outlined above. Moreover, it is clear that the ALJ did not completely reject Mr. Mizzi's findings but instead gave them some weight, considering the consistency of those findings with the functional limitations incorporated into the ultimate RFC assessment.  *Cf. Pellam v. Astrue,* 508 F.App'x 87, 89-91 (2d Cir. 2013) (although ALJ rejected consultative examiner's medical opinion concerning claimant's functional limitations, the ultimate RFC determination was consistent with the consultative examiner's opinion in all relevant ways, rendering  remand to obtain treating source opinion unnecessary).

Plaintiff also contends that, given the ALJ's rejection of the only medical opinion of record as to the functional limitations caused by his impairments (*i.e.*, the PA's functional capacity report), the case should be remanded for further development of the record by recontacting plaintiff's treating sources to obtain a medical opinion as to the effect of plaintiff's impairments on his ability to perform basic work-related activities, and/or for further physical examination by a consultative agency physician.  In this regard, the Second Circuit has long recognized the proposition that, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even

when the claimant is represented by counsel ....' " *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).  This duty "includes assembling the claimant's complete medical history and recontacting the claimant's treating physician if the information received from the treating physician or other medical source is inadequate to determine whether the claimant is disabled ...," as well as "advising the plaintiff of the importance of such evidence." *Batista v. Barnhart*, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004); *see also* 20 C.F.R. §§ 404.1512(d), 416.912(d) (agency "will make every reasonable effort" to obtain medical reports from treating sources).  The regulations also give the ALJ the option, should efforts to recontact treating sources fail, to obtain further medical evidence by requesting that the claimant attend a consultative examination at the agency's expense.  *See* 20 C.F.R. §§ 404.1512(e), 416.912(e); *see also Haskins v. Astrue*, 2010 WL 3338742, at *5 (N.D.N.Y. Apr. 23, 2010).

Conversely, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotation marks omitted).  The Second Circuit has also clarified that the ALJ's failure to request the opinion of a medical source does not require remand "where, as here, the record contains sufficient evidence from which an ALJ can assess the [claimant]'s residual functional capacity." *Tankisi v. Comm'r of Social Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (citing *Moser v. Barnhart*, 89 F. App'x 347, 348 (3d Cir. 2004); *Scherschel v. Barnhart*, 72 F. App'x 628, 630 (9th Cir. 2003); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).

In this case, as discussed, the court's review of the treatment notes and other medical records from plaintiff's health care providers reveals evidence "adequate to permit an informed finding by the ALJ" with regard to plaintiff's functional capacity for substantial gainful employment despite the limitations caused by his physical impairments. *Tankisi*, 521 F. App'x at 34.   Significantly, the record reveals that in December 2009, the agency analyst assigned to plaintiff's disability claim sent plaintiff two written requests to obtain a consultative examination by an internist at the agency's expense, since all available medical evidence had been obtained and a medical decision on disability could not be made based on the existing record (Tr. 148).   However, plaintiff did not comply with the agency's requests (*id.*).   Under the regulations, the ALJ may find the claimant "not disabled" on that basis alone. *See* 20 C.F.R. §§ 404.1518(a), 416.918(a).   Nor has plaintiff identified any medical source with whom he regularly treated who would be able to provide a "detailed, longitudinal picture" by way of opinion on the issue of the nature and severity of his medical impairments.   20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Based on this review, and upon consideration of the record as a whole, the court finds that the ALJ's RFC assessment was accomplished in accordance with the requirements of the regulations, administrative rulings, and case law in a manner sufficient to allow plaintiff and the court to follow her reasoning, and is supported by substantial evidence.   Accordingly, plaintiff is not entitled to reversal or remand on the ground that the ALJ improperly assessed plaintiff's RFC.

### B.     Credibility

Plaintiff also contends that the ALJ failed to properly assess plaintiff's credibility with respect to his subjective complaints of pain.  The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged.  *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999)).  The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant.  Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms.  If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. §§ 404.1529, 416.929.

The Regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.  20 C.F.R.

§§ 404.1529(c)(3)(i)–(vii), 416.929(c)(3)(i)–(vii); *see Meadors v. Astrue*, 370 F. App'x 179,

184 n. 1 (2d Cir. 2010).  The Commissioner's policy interpretation ruling on this process

provides the following further guidance:

> The finding on the credibility of the individual's statements cannot be based
> on an intangible or intuitive notion about an individual's credibility.  The
> reasons for the credibility finding must be grounded in the evidence and
> articulated in the determination or decision.  It is not sufficient to make a
> conclusory statement that "the individual's allegations have been considered"
> or that "the allegations are (or are not) credible."  It is also not enough for the
> adjudicator simply to recite the factors that are described in the regulations
> for evaluating symptoms.  The determination or decision must contain
> specific reasons for the finding on credibility, supported by the evidence in
> the case record, and must be sufficiently specific to make clear to the
> individual and to any subsequent reviewers the weight the adjudicator gave
> to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In this case, the court's review of the ALJ's determination in light of the record as

a whole reveals that the ALJ's credibility assessment was performed in accordance with

this guidance.  As already discussed, the ALJ conducted a thorough examination of the

diagnostic imaging studies, results of physical examinations, treatment notes, and other

medical reports in the record, finding little support for plaintiff's complaints of disabling neck

and back pain.  The ALJ also noted plaintiff's testimony regarding his activities of daily

living, including independently caring for his young son, shopping, cooking, and performing

other household chores, indicating a relatively high level of functioning.  The ALJ also

referred to plaintiff's testimony, supported by the objective medical evidence, revealing that

plaintiff takes no pain medication and receives no physical therapy or other treatment for

his spinal disorders.  And, as indicated above, the ALJ credited the PA's functional capacity

findings with respect to plaintiff's ability to occasionally lift up to 100 pounds and carry up

to 25 pounds.  Based on this assessment, the ALJ determined that "[plaintiff]'s allegations of pain related to his impairments are only partially credible in light of the medical evidence and his hearing testimony" (Tr. 65).

In the court's view, this finding is sufficiently grounded in the evidence and specific enough to make clear to plaintiff, to this court, and to any subsequent reviewers the weight the ALJ gave to plaintiff's statements about the limiting effects of his symptoms, and the reasons for that weight.  As such, and upon review of the record as a whole, the court finds that the ALJ's credibility assessment in this case was performed in accordance with the requirements of the Social Security Act, its implementing regulations, and the weight of controlling authority.  Accordingly, plaintiff is not entitled to reversal or remand on this ground.

### C.    VE's Testimony

Finally, plaintiff contends that the ALJ improperly relied upon the VE's testimony in determining that there were jobs existing in the economy that plaintiff could perform, because the hypothetical question posed by the ALJ to the expert was incomplete and presented an inaccurate portrayal of plaintiff's functional limitations.  The court's review of the hearing testimony reveals otherwise.

The ALJ posed the following question to the VE:

Now, assume with me a hypothetical claimant of the claimant's age, education and experience; this hypothetical claimant is limited to light work and has the following additional limitations: Requires a sit/stand option, allowing to alternate between a sitting and standing position every 30 minutes, only occasional use of ramps and climbing stairs, but never climbing ladders, ropes or scaffolds.  Only occasional stooping, kneeling, crouching and crawling.  Can do occasional rotation and flexion of the neck. Can do frequent, but not constant reaching including overhead reaching with

the non-dominant, left upper extremity.  Should avoid hazards, including moving machinery and unprotected heights.

(Tr. 51).  This hypothetical is entirely consistent with the ALJ's RFC assessment which, as discussed above, was accomplished in accordance with the requirements of the regulations, administrative rulings, and case law, and is supported by substantial evidence.

Accordingly, plaintiff is not entitled to remand on the basis of improper reliance on the VE's testimony.

## CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld.  Accordingly, plaintiff's motion for judgment on the pleadings (Item 9) is denied, the government's motion for judgment on the pleadings (Item 15) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

\s\ John T. Curtin
_____
JOHN T. CURTIN
United States District Judge

Dated:   June 25, 2015
p:\pending\2013\13-83.ssdi.ssi.jun17.2015